TURNER (PIERCE v.). See Cases Nos. 11,148 and 11,149.

TURNER v. The SKYLARK. See Case No. 12,929.

TURNER (SMITH v.). See Case No. 13,119.

TURNER (TAYLOE v.). See Case No. 13,770.

———

## Case No. 14,262a.

### TURNER v. UNITED STATES.

[2 Hayw. & H. 343.] [1]

Circuit Court, District of Columbia. Oct. 23, 1860.

CRIMINAL LAW — EVIDENCE — RES GESTÆ — LARCENY OF BANK NOTE.

Anything that is said and done by the prisoner and the prosecuting witness at the time of the larceny is directly connected with the transaction, and is not in any sense collateral to the issue. It was intended to explain the motives and intent of the prisoner. The evidence ought to have been submitted to the jury, as they were the proper judges of its weight and credit, and the effect they would give to it.

In error to the criminal court. The jury brought in a verdict of guilty. On a trial of this case the following bill of exceptions was presented and signed by J. Hartley Crawford, judge of the criminal court, viz.: On the trial of this cause the United States, to maintain the issue on their part, joined, gave evidence by one A. H. Crogier that on Sunday, the 25th day of April, 1860, in the afternoon, he was with some acquaintance in the bar-room of the National Hotel in the city of Washington talking and drinking, when by some means, he does not know how, whether by introduction or not, he got into conversation with the prisoner at the bar [Henry Turner], who until then was a stranger to him, and in the course of the conversation they took two or three drinks together; in the course of that conversation the prisoner told witness he was a gambler by profession and had his room close by, for which he paid $1,200 a year rent; that he gave elegant suppers every night, and so on, and after a while invited him, the witness, to go with him to his room, where he would give him a glass of such liquor as he could not get in any public place in the city. This

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

was near six o'clock in the evening. He accepted the invitation, and they went out together and went to the prisoner's room, where they got some liquor and drank, and the prisoner asked witness if he had any Virginia money, saying he had use for a small sum and would give him gold for it; witness said yes he had a little and took out of his waistcoat pocket a hundred-dollar note and some small change, and handed the note to the prisoner who took it, looked at it, and put it in his pocket. After a while witness asked prisoner for the gold and prisoner refused to give it to him; witness then asked him for his note and he refused to give him that, and witness asked him why, and he replied: "Because it is a counterfeit." Witness then said: "Counterfeit or not, I have eleven mates to it. I know where I got them from and can have it made good, for I got them in Richmond from the cashier of the Commonwealth Bank." That some words passed between them and the prisoner arose and went to get his hat, and witness asked him what he was going to do, to which he replied: he was going to have him arrested for passing counterfeit money. Thereupon witness left the room, went to the National Hotel, and there stated what had passed; was there advised to have prisoner arrested, and then did go to a justice, procure a warrant, and cause the prisoner to be arrested. On his cross examination the witness said he had not with him at the time the eleven notes he spoke of, that he had previously deposited them with Dr. Jones, the proprietor of the National Hotel, who counted them when he received them and put them in the safe at the hotel, and he did not take them out until after the said $100 note had been got from him by the prisoner, and afterwards he had got them from Dr. Jones; that the prisoner had stated to him that he had a whole roll of notes at the time and he saw them, and saw him take this note from them; but this was not true, and the prisoner thereupon called Dr. Jones, the person spoken of by the said witness, for the purpose of contradicting him, and also for the purpose of showing that in point of fact the witness had with him at the time a large roll of similar notes, and thereby increasing the just ground of suspicion in the mind of the prisoner; that witness was circulating counterfeiting money, and that the note so withheld by him was counterfeit, and for other purposes pertinent to the issue, and offered to prove by Dr. Jones that he never saw the witness until the afternoon of the day of the alleged theft, when witness came to him and said that being drunk the night before he had come with a friend and deposited with one of the clerks at the hotel a large sum of money, which was put in an envelope with his name on it, and locked up in the safe, and asked Dr. Jones to give it to him, and Dr. Jones having

ascertained the facts to be so, did take out the money and gave it to the witness; that witness then went into the bar-room, where he remained with others till toward night; that he afterwards heard that Turner had got some money from him and saw the witness, but witness did not tell him of it, or of any of the facts, and he did not advise him to have him arrested; that the next day witness came to him again, and showed him the roll of money and told him it was the same he had got from him the day before, except a $100 note, which he said Turner had got, and that it was of the same description as the others then shown to him, which he thinks were ten or eleven one hundred dollar Virginia notes, and witness there deposited the money in the safe at the National Hotel. To all which offered evidence the United States attorney objects, and the court sustains the objection and will not permit the same to be given, and the defendant, by his counsel, excepts thereto, and prays the court to sign this, his bill of exceptions, which is done accordingly.

Robert Ould, U. S. Dist. Atty., for the United States.

Before DUNLOP, Chief Judge, and MORSELL and MERRICK, Circuit Judges.

DUNLOP, Chief Judge. We have examined the bill of exceptions in the record in this case. The testimony of Dr. Jones, with the exception of the words, "heard that Turner had got some money from him," and offered by the prisoner Turner on his trial, and included by the ruling of the criminal court, as set forth in the exception, we all think was pertinent to the issue on trial before the jury, and competent and proper to be submitted to their consideration in determining the felonious intent charged against the accused. It all relates to what was said and done by the accused and Crogier, at the time of the alleged larceny, and is directly connected with that transaction. No part of the offered evidence, with the above exception so rejected, is in any just sense collateral to the issue on trial. It intended to impeach the accuracy and credit of the prosecuting witness, as to certain facts connected with the alleged larceny, and to explain the motives and intent of the prisoner Turner. The jury were the proper judges of its weight and credit, and the effect they would give to it, and it ought to have been submitted to them. We reverse the judgment of the criminal court, and remand the cause, with directions to that court to award a venire facias de novo.

TURNER (UNITED STATES v.). See Cases Nos. 16,547–16,549.

TURNER (VIRGINIA v.). See Cases Nos. 16,970 and 16,971.